THE BALTIMORE AND OHIO RAIL ROAD COMPANY *vs.* JOHN
A. GREEN.

RAIL ROAD COS., AS COMMON CARRIERS,—THEIR OBLIGATIONS AND
LIABILITIES: PRAYERS AND INSTRUCTIONS TO THE JURY: CONTRACT,—
CONSTRUCTION, OF.—In an action by a consignor, G., against the Balt.
& Ohio R. R. Co., to recover the value of three thousand bushels of oats
lost in transportation, it was held:

That if the defendants accepted the oats for transportation from Baltimore
to Washington, and charged in addition to the usual freight for trans-
portation between those points, a further compensation for streetage to
the foot of 6th street, in the latter city, and failed to deliver the oats to
the consignee, F., or his agent, or at the foot of 6th street, then the plain-
tiff was entitled to recover although the jury might find the terminus of
the road to be within the depot in the city of Washington, and that the
oats were delivered safely at that point.

An undertaking to transport and deliver beyond the terminus of the car-
riers lines, is not within the common law liability of a common carrier.

The Railroad Company were not obliged by law to carry freight beyond
the station at Washington; their obligation, if any results from a promise,
express or implied, to take the freight further for additional compensa-
tion, which contract, like all others, must be construed by the circum-
stances under which it was made.

An instruction that if the oats were hauled beyond the limits of the station
upon a road belonging to other parties than the defendants, " they were
at the risk of the consignor," is too broad to be sustained, as it omits all
consideration of a special contract between the consignor and the Rail-
road Company.

An instruction that if the jury shall find that it was the custom of the Rail-
road Company to refuse to transport goods on tracks outside of the
station, except at the risk of the owners, then the plaintiff was not enti-
tled to recover, is subject to the same objection.

A prayer affirmed that if the oats were received without bill of lading, and
the evidence of the obligation of the defendants to transport them, was
the bill of freight offered in evidence, and the cars containing the oats
were marked accordingly in Baltimore, then the defendants were bound
to convey the oats to F. in the city of Washington, and their obligation
in this respect was discharged on their safe arrival at the station in
Washington; and if the jury believe that P. was authorized to act for

F. and saw the oats at the station in W., then F. had notice of the arrival of the oats at their place of destination, and it was his duty to provide for them. HELD:

1st. That the jury were not to determine what was the evidence of the obligation of the defendants, whether it consisted solely in the bills of freight or in those bills connected with the direction on the cars, or other facts and circumstances; that was the province of the Court.

2nd. That the jury were to judge whether the oats were delivered according to the contract, upon such evidence as the Court should decide was competent and proper to go to the jury.

3rd. That the prayer was further objectionable as a direction to the jury of what was the evidence of the obligation of the defendants, as that did not consist alone in the bill of freight,—there being evidence that the cars were marked "to be delivered to Lieut. F., 6th street wharf," and it being admitted that streetage was paid.

A prayer affirmed that under the circumstances of the case, it was the duty of the consignor to have had an agent on the spot to which the cars were to be transported, to receive the same, and the Railroad Company, were not bound to give notice of the arrival of the cars. HELD:

That the prayer not having excluded a special contract, or course of business or usage to the contrary, did not warrant the conclusion of law sought to be established by it.

An instruction that no usage or course of business between the Railroad Co. and the consignee, or the Railroad Co. and its customers generally, would, under the circumstances of the case, dispense with notice of the arrival of the cars by the company to the consignee or his agent, unless it appeared that he had notice or knowledge of that arrival, was held to be bad.

The Court should have left it to the jury to find whether the course of dealing between the company and the consignee was such as to make it unreasonable to expect personal notice of the arrival of the cars, and if such course of dealing rendered such notice unnecessary or dispensed with it, then the company was not imperatively required to give such notice, to constitute delivery, notwithstanding the extra charge of streetage.

APPEAL from the Superior Court of Baltimore city.

This action was brought on the 23rd of February, 1863, in the Superior Court of Baltimore city, by the appellee

against the appellant, to recover the value of three thousand bushels of oats shipped at Baltimore city by the appellee, between the 1st and 8th days of February, 1862, directed to Lieutenant Fergusson, a Forage Agent of the U. S. Government, at the foot of 6th Street Wharf in Washington city.

The judgment of the Court below, (MARTIN, J.,) was in favor of the appellee, and from this judgment this appeal was taken by the Railroad Company.

The case is fully stated in the opinion of this Court.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH, COCHRAN and WEISEL, J.

*John H. B. Latrobe,* for the appellants :

Had the case rested on the receipts alone, there can be no question that the conceded delivery at the station in Washington, would have discharged the appellant.

The inquiry then is—what testimony is there to extend the appellant's liability beyond the station.

A witness named Putnam, a clerk of Fergusson, the consignee, testified, that the cars described in the receipt were "marked with cards or chalk, to be delivered to Lieutenant Fergusson, 6th Street Wharf." This was an important fact; but Masterman, the witness, whose duty it was to mark cars in Baltimore, recollected these very cars, and flatly contradicted Putnam, swearing that the cars were marked by him, "Lieutenant Fergusson, Washington, D. C." Which of the men told the truth was a fact to be determined by the jury.

This point, however, becomes of less importance, because it is admitted, as well as proved, that the cars in question were in fact taken beyond the limits of the station by an engine of the appellants, under charge of one of their agents, and left on the Maryland avenue, the 6th street siding or at 6th street wharf, and that the appellants charged for so taking the cars beyond the station.

Then comes the question—the original liability being discharged by the arrival of the cars at the station, and a new one assumed, the charges for the two being distinct—when they did the latter, the only one which it is contended was not discharged, cease?

Evidence was offered by the appellants to show that it was the usage, when cars were hauled beyond the station, to leave them at the risk of the owners—for the very plain reason, given by one of the witnesses, that they were then beyond the reach of the appellants to protect them from robbery. It is insisted, on the other hand, however, that the proof of such usage was either insufficient or inadmissible.

The Court could not take from the jury the question, whether the consignee knew of the custom; for Putnam, his clerk, seems to have been in constant intercourse with the agents of the appellants, and doing a large business with them,—exactly in the way to inform him of the customs of the road in this particular.

Now, unquestionably, custom when proved, enters into contracts—and there being evidence here of a custom affecting the liability of the appellants after the arrival of the cars at Washington, and after they left the station, the Court should not have ignored it—but have left it to the jury to say whether there was such a custom, (*Allegre's Admn's vs. The Maryland Insurance Co.*, 2 *G. & J.*, 236,) and whether it, in fact, entered into the contract for the transportation beyond the station; and having shown there was evidence of the custom, and evidence also, from which the jury might infer the consignee's knowledge of it, it follows that the vice of the Court's instruction is in having omitted to put this evidence before the jury; and for this reason alone, the judgment should be reversed. *Powell vs. Bradlee*, 9 *G. & J.*, 275.

That the jury were satisfied of the usage or custom, and that the consignee, through his agent, was aware of it, is apparent from the question which they addressed to the Court from the jury room.

It is believed the Court erred again, in not adding to the reply to the jury, "unless the jury shall believe that it was the usage or custom of the appellants to leave their cars on the Maryland Avenue, or 6th street siding, or 6th street wharf, when consigned to the consignee or his agent, and that the consignee had notice of such usage; and that if the jury believe that the consignee, or his agent, was in the habit of receiving large numbers of cars daily and at the places where they were ordinarily left, without actual personal notice to the consignee or his agent, or knowledge on his part of the time when such cars were left there, or of their being left, then such notice need not be proved."

That there was testimony to go to the jury on these points is clear.

The appellee's own witness, Putnam, swears that he received as many as twenty cars a day at this station for the Government, and McMurphy, the appellant's witness, swears "that the three missing cars were hitched to a locomotive with other cars at the Washington station in different trains and hauled therefrom, and left either on Maryland avenue or 6th street siding or 6th street wharf, at all of which places he was in the habit of leaving cars:" "the cars in question being left at one place or the other," as the agent might direct.

That the witness, Putnam, was ignorant of this practice is simply incredible; so the jury must have thought, and they evidently believed that it was sufficient notice to him. The Court, however, told them that this knowledge must be visited upon him personally; and this left them no alternative but a reluctant verdict, contravening their sense of justice, after a night's confinement in the jury room.

It has thus been attempted to show, that both in the instruction given in the Court room, to the jury, and in that sent to them in the jury room the Court below erred,—in the first, in ignoring the question of usage absolutely in the face of competent evidence in regard to it; and in the second, in requiring notice of the arrival of each car to be given personally to an agent, familiar with the times of the arrival and departure of the cars, and in communication, as is proved with the witness, McMurphy, who hauled them from the station, and the said agent doing an immense business with the road at the time.

Independent of these considerations, however, there is a view of this particular case, in which it should certainly be sent back on a *procedendo.*

The jury address an inquiry to the judge in writing. It is answered in writing and the reply is lost. What effect that reply may have had upon the jury, it is now impossible to say—whether the instructions of the Court, otherwise, were right or wrong, this particular missing instruction may have been utterly erroneous, and the case should go back, if only that the appellants may have an opportunity of trying the cause on instructions which may be reviewed.

*T. M. Lanahan and John Carson,* for the appellees:

I. It is submitted upon the testimony as a matter of fact clearly proved that the appellant contracted to deliver the oats now sued for at the foot of 6th street wharf, and received in addition to the usual freight from Baltimore to Washington, a further compensation for the transportation from the Washington station to the 6th street wharf. The witness, Putnam, swears positively that the cars containing the oats sued for were never delivered at 6th street wharf, and that the appellee was compelled to deliver to the United States others in lieu thereof, and that one of said cars, No. 542, he subsequently

found empty at Alexandria. He further states that the appellant's agent, McMurphy, told him that the same cars were on Maryland avenue, and that he would hurry them down; and he also swears that he made inquiries at the railroad station, and never could learn what became of these cars. The only rebutting testimony is the statement of McMurphy that the cars in question were delivered either on Maryland avenue, 6th street siding or 6th street wharf, but he cannot identify the place where the said cars were left.— The appellant offered in evidence below, subject to exception, the testimony of the witnesses Koontz, Collins and England, that the Washington station is the place of delivery, that cars or goods delivered outside of the station are at the risk of the consignee; and Koontz further testifies that the delivery is complete when the cars are placed on Maryland avenue, and that it was necessary to get the permission of the United States to use the track to the 6th street wharf.

II. This testimony is excepted to on the following grounds as legally inadmissible:

1st. Koontz was not in Washington or in the appellant's employ until April, 1862, and could not, therefore, have personal knowledge of a usage or custom prevailing there in February, 1862; and for the same reason he could not know that it was then necessary to get the permission of the United States to use the 6th street track. 1 Greenl'f on Ev., sec. 252.

2nd. For the same reason Collins' testimony is inadmissible, he speaks only of deliveries on New Jersey and Indiana avenues, and says "he knows nothing of the custom on Maryland avenue."

3rd. The like objection applies to England's testimony, he was not in Washington, and swears he does not know there was a custom in Washington.

4th. As England and Koontz can legally know nothing of

APRIL TERM 1866. 79

The Balto. & Ohio R. R. Co. vs. Green.

such custom, the testimony of Collins, a single witness, would be legally insufficient to establish such custom. 2 *Greenl'f on Ev.*, sec. 252.

5th. But suppose this evidence admissible to prove the custom that deliveries made or cars put outside of the station, are at the risk of the owner, what is its legal effect? Can it relieve the company from an express contract to deliver at a point outside of its station? Does it not concede that the car is to be, and will be delivered outside, but when so delivered the company will not thereafter be responsible for its contents, either before or during its unlading, for the reason stated by England,—fear of robbery, and the inability of the company to protect the property? And Koontz assigns the same reason : if a person desires to hold the company responsible he must unload the car inside the station.

And it is submitted that this usage, if proved, is neither certain, uniform or general, or known to the parties, but is too vague and unmeaning to base upon it any proposition to the jury. *Foley, &c. vs. Mason, &c.*, 6 *Md. Rep.*, 37. 8 *Gray*, 547. 16 *Ohio*, 517. 2 *Greenl'f Ev.*, Sec. 292.

III.—1st. It is submitted that the appellee's prayer below was properly granted; it required the jury to find that the oats were delivered in Baltimore city by the appellee to the appellant, to be transported by it to Lieutenant Fergusson, at the foot of 6th street, Washington ; that the appellant accepted said oats and charged, in addition to the usual freight for transportation from Baltimore to Washington, a further compensation for streetage to the foot of 6th street, and that the appellant failed to deliver said oats to Lt. Fergusson or to his agent, or to the foot of 6th street, and that having found these facts then the appellee is entitled to recover, although the jury find the corporate terminus of the road is in the depot at Washington, and the oats safely arrived there out of the corporate limits of said company, and that the oats failed to reach Lt. Fergusson.

Ordinarily the appellant would be held to deliver at its depot, but for an additional consideration it has specially contracted to deliver elsewhere, viz: foot of 6th street; being competent to make such a contract, and having received the special consideration, it must be held to perform it, and the transit did not end, nor could the delivery be made except at the place contracted for, and until that was reached the company's liability as a common carrier, continued in full force; besides, the contract was not unreasonable or impossible, for the company was delivering at this very place twenty cars a day. *Redfield on Railways,* 250, *sec.* 130, *2d paragraph, and* 284 *to* 289. *Hyde vs. Trent, & Mersey Nav. Co.,* 5 *T. R.,* 389. 1 *Par. on Cont., (Notes,) p.* 660, 661, 665. *Richards vs. The London, &c. Railway,* 7 *C. B.,* 839, (62 *Eng. C. L. Rep.,* 837.) *Butcher vs. London, &c., Railway,* 29 *Eng. Law & Eq.,* 347, (81 *Eng. C. L. Rep., p.* 12.) *Farmers & Mechanics' Bank vs. Champ. Trans. Co.,* 23 *Vermt.,* 186. *Noyes vs. The Rut. & Bur. Railway,* 27 *Vermt.,* 110. *Weed vs. Saratoga, &c., R. R.,* 19 *Wend.,* 534. *Muschamp vs. L. & P. Junction R. Co.,* 8 *M. & W.,* 421. *Coxen vs. G. W. R. R. Co.,* 5 *Hurl. & Nor.,* 274. *Bristol vs. Collins.* 5 *Hurl. & Nor.,* 969. See also, 2 *Mich.* 539.

2nd. The appellant's first prayer consists of two members; 1st, That if the oats were to be transported to Washington by the appellant, and its road terminated at the Station; that if the oats reached the station, and the 6th street road did not belong to the appellants, then the Station was the place of delivery, and the Company's liability as a common carrier there ended; 2nd. If the appellant, at the appellee's instance, hauled the oats out of the Station on the 6th street road, belonging to other parties, then said oats were at the appellee's risk after leaving the station, and if actually left on Maryland Avenue, 6th sidcling, or 6th street wharf, the Company's obligation was discharged.

This entire prayer is open to the fatal objection, that it does not put to the jury the evidence touching the special contract, and under it the appellant would be entitled to recover, although the jury should find the special contract. *Fulton vs. Maccracken,* 18 *Md. Rep.,* 528. *Coates vs. Sangston,* 5 *Md. Rep.,* 121.

This prayer also asserts various independent propositions, the falsity of any one of which is sufficient to reject the whole prayer. *Budd vs. Brooke,* 3 *Gill,* 198. *Marshall vs. Haney,* 4 *Md. Rep.,* 498.

The first member of this prayer ignoring the special contract asserts, that if appellant's road ends at the station and it does not own the 6th street road, of which fact there is no evidence in the cause, then the station is the place of delivery, and there the liability as carrier ceases.

The answer is, you have made a special contract to the contrary; that contract is legally binding upon you, (see authorities above;) and if the prayer does not mean to deny the validity of such special contract, then the want of ownership of the 6th street road is neither an excuse or justification of the company's failure, because it was a practicable matter daily to deliver by that road, and other modes of delivery were not impossible.

The vice of the first member of the prayer taints the second member, which begins by assuming that the company's liability ended at the station. This second member is also open to the objection that it does not require the jury to find the alleged usage that goods are at the risk of the owners after leaving the station, but assumes that fact without evidence as a legal proposition, despite the special contract; and the exclusion from the prayer of this supposed usage, which is the only defence to our special contract, is fatal. *Md. & Del. R. R. vs. Porter,* 19 *Md. Rep.,* 458. *Fulton vs. Maccracken,* 18 *Md. Rep.,* 528. *Coates vs. Sangston,* 5 *Md. Rep.,* 121.

The last proposition of the second member of this prayer relieves the appellant from liability, if the cars containing the oats were hauled from the station, and left either on Maryland avenue, 6th street siding, or 6th street wharf; no such delivery could gratify the special contract to deliver at 6th street wharf, and a delivery elsewhere is invalid. Assuming the theory of this whole prayer as correct, that the appellant's duty as common carrier ceased at the station, then having received extra compensation to haul the cars from there to 6th street wharf, it must be deemed a bailee for hire, bound for ordinary diligence; and the proof being undoubted in this cause, that the appellant daily hauled cars over the road to 6th street wharf, and could have hauled the cars in question there, but did not, and not having in any way accounted for its failure, then it would have been responsible, as a bailee for hire for want of ordinary diligence, and the prayer was therefore properly refused. The alleged usage could not relieve from gross negligence. 1 *Pars. on Cont.*, 711. *Redfield on Railways*, 272, 280.

3rd. The appellant's second prayer differs from the first only in requiring the jury to find the custom or usage. It is insisted, that the whole testimony as to the usage is legally inadmissible, and if admissible, that there is no evidence that the risk of transportation was upon the owner, the only risk which the testimony could prove being, that after the cars or goods are delivered, or whilst they are being unloaded, they are at the risk of the owner; and even if the risk of transportation was proved, it would not relieve the company from gross negligence in transporting the goods. (*Vide* authorities above.)

4th. The appellant's third prayer ignores the special contract, payment of streetage, &c., and fails to put these facts to the jury; it also assumes the station to be the place of delivery, which has been already answered; and requires the

witness, Putnam, to accept a delivery at the station, and to provide transportation to 6th street wharf, when the company had agreed to transport thither.

5th. The appellant's fourth prayer presents two legal questions: first, that if cars were to be hauled beyond the station, it was the duty of the appellee to have an agent at the point of destination or delivery to receive the cars; second, that the appellant was not bound to give notice of the arrival of the cars at their destined place; the question of notice is discussed under the last head of the brief, and will not be anticipated here; but if it was the duty of the appellee to have his agent there, then the proof is uncontradicted that the consignee had agents there, who would have received the cars in question had they arrived; and if it was not his duty to have such agent there, then this instruction would lead the jury to the inference that such failure excused or justified the non-delivery, and therefore tended to embarrass and mislead the jury.

The failure of the appellee to have an agent there, could not relieve the appellant from its liability as a common carrier; the prayer, therefore, presented an abstract question, and was irrelevant. *State ux. vs. Reigart*, 1 *Gill*, 1. And if delivery could not be made, because no one was there to receive, then the carrier was bound to store the goods, or act as warehousemen. *Parsons' Mercantile Law*, 207, *Fisk vs. Newton*, 1 *Denio*, 45. 1 *Parsons on Cont.*, 659.

6th. The appellant's fifth prayer was properly rejected, for there is abundant evidence in the cause that the appellant undertook to transport the oats in question to the foot of 6th street.

7th. It is submitted, that if the usage or custom was not proved, or if proved, then not admissible to vary or contradict the special contract, then the law of the case was properly laid down in the appellee's prayer, and the granting of

that prayer necessitated the rejection of all the appellant's prayers, as they alike ignore the special contract. *Keech vs. Balto. & W. R. R. Co.*, 17 *Md. Rep.*, 32. *B, & O. R. R. Co. vs. Resley*, 14 *Md. Rep.*, 424.

8th. In reply to an inquiry from the jury, the Court gave an instruction. It is based on the special contract, the facts of which it requires the jury to find; and it asserts as the law applicable to these facts, that a delivery of the cars on the line of road, without notice to the consignee, is invalid.

The general rule is, that a railroad company delivers at its station, but much conflict exists among the authorities as to what constitutes a delivery there; some of the cases hold that when goods reach the station and are unloaded, the duty of the carrier ceases, and that of warehouseman begins, and notice to the consignee is necessary. *Norway Plains Co. vs. B. & M. R. R. Co.*, 1 *Gray*, 263. *Thomas vs. B. & P. R. R. Co.*, 10 *Met.*, 472. Other cases deny this rule and hold notice necessary. 2 *Kent*, 604, 607, 775, 777.— *Mich. Cent. R. R. vs. Ward*, 2 *Mich.*, 538. 1 *Pars. on Cont.*,, 664. *Rome Railway vs. Sullivan*, 14 *Ga.*, 277.— *Redfield on Railways*, 254, holds notice of arrival at the station unnecessary, but insists that the liability as carrier continues until a reasonable time has elapsed to remove the goods. *Moses vs. B. & M. R. R.*, 32 *N. H.*, 523.

In reference to carriers by water the rule is that delivery upon the usual wharf, with notice to the consignees, takes the place of personal delivery, but all the late cases hold the carrier's liability to continue until consignees have had a reasonable time to remove the goods. *Parsons on Maritime Law*, vol. 1, 155. *Ostrander vs. Brown*, 15 *Johns. Rep.*, 39. *Hemphill vs. Chime*, 6 *Watts & Serg.*, 39. *Price vs. Powell*, 3 *Comst.*, 322. 21 *Law Reporter*, 6, 12 and 14. *Steamboat Albatross vs. Wayne*, 16 *Ohio*, 513. *Segura vs. Reed*, 3 *La. Ann.*, 695. *Barclay vs. Clyde*, 2 *E. D. Smith*, 95. *Gatliffe*

*vs. Bourne*, 33 *Eng. C. L. Rep.* 364, 42 *Eng. C. L. Rep.*, 338. *Same vs. same*, 49 *Eng. C. L. Rep.*, 849.

Whatever may be the rule as to the delivery at the station, it is insisted that it cannot apply to this case, for though the law ordinarily ends the transit at the station and makes that the point of delivery, yet this may be changed by a special contract or by usage, and in this case the appellant has especially contracted, beyond his usual liability, to transport to and deliver to Lieut. Fergusson, 6th street wharf; the proof shows that Fergusson's depot was there, his agents were there, and the track ran to this point, the delivery to him there was therefore practicable, and the appellant must be bound as a matter of law under this contract to a personal delivery there.

The authorities above cited establish the validity of this contract, and it can only be satisfied by a personal delivery, which is notice, or by leaving the cars at Fergusson's depot, with notice that the company has so left them. *Far. & Mec. B'k vs. Ch. Tr. Co.*, 16 *Vt.* 52. 18 *Id.* 131. 23 *Id.* 186. *Redfield on Railways*, 250. *Parsons on Cont.*, 660, 670. *Barclay vs. Clyde*, 2 *E. D. Smith*, 95. *Kohn vs. Packaro*, 3 *La.*, 224. 2 *Kent*, 605, 606, 774, 776. *Miller vs. Steam Nav. Co.*, 13 *Barb.*, 361.

BOWIE, J., delivered the opinion of this Court:

The appellee sued the appellant as a common carrier, upon a contract " to take, carry and deliver a large quantity of oats, then in the city of Baltimore, to the city of Washington, at the foot of 6th street in said city, at and for the sum of $18 per car load ;" and that the plaintiff delivered to said defendant three thousand bushels, of the value of sixty cents per bushel, which were so negligently and carelessly carried, that they were lost to the plaintiff, to which the defendant pleaded " that the oats mentioned in the nar., were delivered according to the obligation of the defendant in regard thereto,"

upon which plea there was joinder in issue, and waiver of errors in pleading.

At the trial, after testimony of the delivery of the oats by the plaintiff to the defendant for transportation, to be delivered to Lt. Fergusson, forage agent of the U. S. Government at Washington, it was proved by one Putnam, that he was clerk of Fergusson, and being informed of the consignment of the oats by Green, and not having received them, he went to the depot of the defendant and saw the four cars which were missing, on the track inside of the depot, which cars were marked Nos. 67, 895, 889 and 542, and marked " to be delivered to Lt. Fergusson, 6th street wharf." That said cars not arriving at 6th street wharf, the witness made inquiries for them but could only find one of them, that being the car numbered 542, which he found subsequently had been discharged in Alexandria. It was conceded that streetage was charged on the cars.

The defendant proved by a competent witness, that it was his duty to attend to the delivery of cars from the Washington station, upon Maryland avenue, 6th street siding, and 6th street wharf. That the three missing cars were hitched to a locomotive with other cars at the Washington station, in different trains, and hauled therefrom and left either on Maryland avenue or 6th street siding, or at 6th street wharf, he did not remember which. The custom was to deliver all cars marked for Lt. Fergusson at the foot of 6th street. The defendant further proved by a certain George Koontz, that he was agent of the defendant and had been so since April, 1862; that the Washington Branch Rail Road terminated at the station house at N. Jersey avenue; that it had been the custom since he had been there to regard the station as the place of delivery of the cars when they are put on the Maryland avenue, it is with the distinct understanding; that the owner takes the risk, if any. The cars for the Washington station,

as a general thing, are marked Washington city, D. C., and generally with chalk, they are so marked when they come to Washington; the manifest tells where they are to go, and sometimes the name of the consignee. The defendant will not deliver cars outside of the station at its risk; the witness says this is the custom since he has been there.

Objections were taken to the testimony of this, and others of the witnesses, which it is unnecessary to notice, as they form no part of the bill of exception.

The appellee offered a prayer which was granted, and the appellant offered a series of prayers numbered from 1 to 5 inclusive, all of which were rejected; besides which, in reply to an inquiry from the jury after they had retired, the Court gave a written instruction. To the granting of which prayer of the appellee and instruction of the Court to the jury, as well as to the rejection of the appellants' prayers, the appellant excepted and prayed an appeal. The legal proposition contained in the plaintiff's prayer is, that if the defendant accepted the oats for transportation from Baltimore to Washington, and charged in addition to the usual freight for transportation between these points a further compensation for streetage to the foot of 6th street, and failed to deliver the oats to Furgusson or his agent, or at the foot of 6th street, then the plaintiff was entitled to recover, although the jury might find the terminus of the road is within the depot in the city of Washington and said oats were delivered safely at that point.

The appellant's first prayer is the converse of the appellees, with several additional qualifications of liability. This asserts as a legal proposition, that if the Washington branch of the defendant's road, terminated at their station in Washington, and the road from such station to the Maryland avenue, 6th street, etc., was not the road of the defendant; and the oats were safely transported from Baltimore to the station in Washington, then said station was the proper place for the

88 MARYLAND REPORTS.

The Balto. & Ohio R. R. Co. vs. Green.

delivery of the oats, and the obligation of the defendant, as a common carrier, for their transportation and delivery, did not extend beyond; and if the jury believe, that at the instance of the appellee, or his agent, the defendant hauled the oats beyond the limits of the station, upon a road or roads belonging to other parties, and where the defendant had no station or agencies to receive them, then the oats, after leaving defendant's station, were at the risk of the owners; and if the jury believe the oats were in fact hauled from the station of the defendant on the road spoken of by the witnesses, as belonging to the U. S., and were left in cars containing them on the Maryland avenue, or 6th street siding, or 6th street wharf, then the plaintiff was not entitled to recover.

The second affirms, that if the jury shall find the facts stated hypothetically in the first prayer, and shall further find, that it was the custom of the defendant to refuse to transport goods on tracks outside of the station at Washington, except at the risk of the owner, then the plaintiff (the appellee) is not entitled to recover.

3rd. If the jury shall find from the evidence, that the oats were received without any bill of lading, and that the evidence of the obligation of the defendant to transport them is in the bill for the freight thereof offered in evidence, and that the cars containing them were marked accordingly in Baltimore, then the defendants became bound to transport the oats to the said city, and their obligation in this respect was discharged on the safe arrival of the oats at the station in Washington; and if the jury believe the witness, Putnam, was authorized by Fergusson to act for him, and that he saw the oats in the station at Washington, then Fergusson had notice of their arrival at their destination, and it was his duty, if he desired them to be transported further, to provide therefor.

The 4th prayer affirms, that if the jury find the facts stated hypothetically in the first, and that the cars containing the oats were transported beyond the defendant's premises, at the instance of the plaintiff and his agents, then the plaintiff should have had an agent on the spot to receive the same, and the defendants were not bound to give notice of the arrival of the cars.

5th. That there is no evidence in the cause of an undertaking on the part of the defendant, to transport the cars spoken of by the witnesses to the foot of 6th street.

The several propositions of the appellant and appellee, involve the liability of common carriers for transportation of articles accepted to be delivered beyond the terminus of their lines; the obligation arising from compensation charged for transportation "*ultra viam*," and the operation of "course of dealing" upon the duty of the carrier to give actual notice to the consignee.

An undertaking to transport and deliver beyond the terminus of the carrier's lines, is not within the common law liability of a "common carrier."—The definition of the term excludes that class of contracts.

A common carrier is one obliged by law to undertake the charge of transportation, without special agreement, and responsible as insurer for any loss to the property, for which he could not provide, from whatever cause arising, the acts of God and the public enemy only excepted. *Angell on Carriers*, 70.

The defendant or appellant in this case, is sued as a common carrier upon a contract to deliver goods at a particular destination beyond the terminus of its corporate road. The object of the plaintiff's prayer is to declare its liability as such extends to the delivery of the articles transported at the point indicated by the agreement; and the appellant's first prayer proposes to limit their liability to the station in

12　v. 25.

90      MARYLAND REPORTS.

The Balto. & Ohio R. R. Co. vs. Green.

Washington, and not beyond. The appellant was not obliged by law to carry the freight beyond its station at Washington. Its obligation (if any) results from a promise, express or implied, to take the freight further for additional compensation, which contract, like all others, must be construed by the circumstances under which it was made.

The tendency of the English authorities has been to hold railroad companies, who receive goods and book them for a certain destination, as common carriers throughout the route, even if the place is beyond the limits of that to which they are accustomed to carry and deliver. *Muschamp vs. Law & Preston R. R. Co.*, 8 *M. & Welsby R.*, 421. *Weed vs. Schenec. & Syra. R, R. Co.*, 19 *Wend.*, 534. *Angel on Carriers*, sec. 98. *Redfield on Railways*, 282. The last author remarks, " but this rule has been very seriously questioned in this country. The general view of the American Courts upon this subject is, that in the absence of special contract, the rule laid down in the earlier English cases, that the carrier is only liable for the extent of his own route, and for the safe storage and delivery to the next carrier, is the more just and reasonable one upon the subject, and this is the doctrine which the Courts in this country are more generally inclined to adhere to."—"In this country, the Courts have held that when goods are delivered to a carrier marked for a particular place, but unaccompanied by any other directions for their transportation and delivery, except such as might be inferred from the marks themselves, the carrier is only bound to transport and deliver them according to the established usage of the business in which he is engaged, whether that usage is known to the party for whom they were received or not." Vide. 6 *Hill N. Y.*, 157. 18 *Ver't Rep.*, 140. 23 *Ib.* 209, *Redfield on Railways*, 282, note 6, and authorities there cited.

The first branch of the appellant's first prayer is strictly

consonant with the more recent authorities above cited. It is predicated upon the hypothesis that the contract for transportation was from Baltimore to Washington, and the terminus of the appellant's road was at their station in that city, at which, their liability as common carrier ceased, no special contract intervening. The succeeding proposition in the same prayer, on the supposition that the oats were hauled beyond the limits of the station upon a road belonging to other parties, etc., "they were at the risk of the appellee," is too broad to be sustained, as it omits all consideration of a special contract between the consignor and the appellant. Taken as a whole, the prayer was properly rejected.

The second prayer of the appellant, based upon the same hypothesis as the first, with the addition "if they shall find it was the custom of the appellant to refuse to transport goods on tracks outside the station, except at the risk of the owner," the plaintiff was not entitled to recover, is subject to the same objection as the first. Usage and custom never prevail where there is a special or express contract, unless, in some particular, as to which the contract was silent. The prayer should have been qualified with the proviso, unless there was a contract to the contrary.

The appellant's third prayer, is directed to the character and effect of the evidence of the contract to carry the oats. It affirms substantially, if the oats were received without bill of lading, and the evidence of the obligation of the defendant to transport them, is in the bill of freight offered in evidence, and the cars containing the oats were marked accordingly in Baltimore, then the defendant was bound to convey the oats to Fergusson in said city, (Washington,) and its obligation in this respect was discharged on their safe arrival at the station in Washington; and if the jury believe Putnam was authorised to act for Fergusson, and saw the oats at the station in Washington, then Fergusson

had notice of the arrival of the oats at their place of destination, and it was his duty to provide for them.

The bills of freight offered in evidence were dated Balto. Feb'y 1, 3 and 8, 1862. They are in the following form, viz:

. BALTIMORE, *Feb'y* 8, 1862.

*M. Lt. Fergusson* 67.

<table>
<tr><td></td><td>*T. A. Green,*</td><td>*Dr.*</td></tr>
<tr><td colspan="2">To the Baltimore and Ohio Rail Road Company,</td><td></td></tr>
<tr><td colspan="2">for transportation on 1 load of oats, 250 bags,</td><td></td></tr>
<tr><td colspan="2">sent 6th of Feb. from Baltimore to Washing-</td><td></td></tr>
<tr><td colspan="2">ton city, 19,200 lbs.</td><td>$19.20</td></tr>
<tr><td colspan="2">W. street,</td><td>2.00</td></tr>
<tr><td colspan="2"></td><td>$21.20</td></tr>
</table>

Received payment for the Comp'y,

D. C.

The jury were not to determine what was evidence of the obligation of the defendant, whether it consisted solely in the bills of freight, or in those bills connected with the direction on the cars, or other facts and circumstances,—that was the province of the Court. The jury were to find whether the oats were delivered according to the contract upon such evidence as the Court should decide was competent and proper to go to the jury. This prayer was therefore vicious because it submitted to the jury a question of law; but it was objectionable, if understood as a direction to the jury of what was the evidence of the obligation of the defendant, as that did not consist only in the bills of freight.

There was evidence that the cars were marked "to be delivered to Lt. Fergusson, 6th street wharf," and it was admitted streetage was paid. Such an instruction could not have been given upon a partial statement of the facts,—being objectionable for these reasons, it is unnecessary to notice other grounds of exception.

The appellant's fourth prayer affirms, that under the circumstances referred to, it was the duty of the appellee to have an agent on the spot to which the cars were to be transported to receive the same, and the appellant was not bound to give notice of the arrival of the cars. The facts before referred to, not excluding "a special contract or course of business, or usage to the contrary," did not warrant the conclusion of law sought to be established, therefore it was properly rejected. The jury, however, after retiring addressed an inquiry to the Court in these words " do we understand the ruling or opinion of the Court is, that the Railroad Company is bound to give notice personally by some of its agents to make a delivery, notwithstanding the usage of the company is to put certain cars at the usual point of delivery ?" To which the judge replied : "I instruct the jury that if they find the cars in question arrived in Washington, and for a charge of $2 per car were subsequently sent by the defendant to Maryland avenue, or elsewhere, it was the imperative duty of the company to notify the consignee or his agent of that arrival, unless the jury find from the evidence that the consignee or his agent was aware or had knowledge that the cars had arrived at such place of delivery. If the consignee or his agent had knowledge of the arrival of the cars at the place of delivery, such knowledge stood in the place of notice." This instruction taken in connection with the inquiry of the jury, was equivalent to instructing them, that no usage or course of business between the company and the consignee, or the company and its customers generally, would, under the circumstances detailed, dispense with notice of the arrival of the cars by the company to the consignee or his agent unless it appeared that he had notice or knowledge of that arrival. It will be seen that railroads, having established and well known places of delivry, and hours of arrival and departure are exempted from the usual obligation of common carriers, to make a personal

delivery or give notice of arrival. " The general result of the cases is said by Ch. J. Redfield to be, that the question when the duty of the carrier ends, is one of fact or contract to be determined by the jury with reference to the mode of transportation, the special contract, if any, the course of business at the place, and other attending circumstances. It finally often resolves itself into the inquiry whether the carrier did all in respect to the goods, which, under the peculiar duties of his office, the owner had a right to expect of him. Where the facts are not disputed and the course of business of the carrier is uniform, the extent of the carrier's liability will become a question of law merely, as all such matters are under the circumstances." And we understand the cases to have settled the question that the carrier by railway is neither bound to deliver to the consignee personally or to give notice of the arrival of the goods." *Redfield on Railways*, 251, 252.

There was evidence of a course of dealing between the company and the consignee, (not to speak of the evidence of usage which was objected to.) According to the evidence of the clerk of the consignee, the consignee's depot was the 6th street wharf, in the city of Washington, the consignee being the forage agent of the Government; and that it was his duty to report every night all cars that arrived at the foot of 6th street, to Capt. Dearing; that as many as twenty cars a day were received at that depot for Government, whence oats were shipped to Alexandria. The custom was to deliver all cars marked for Lt. Fergusson, at the foot of 6th street.— Whether such evidence established the fact of such course of a dealing was for the jury, but if they found such a course of a dealing existed, its effect upon the obligation of the appellant to give notice of the arrival of the cars, and the necessity of such notice to constitute a delivery, was for the Court. In the language of the Court, in 23 *Ver't Rep't*, 186, " the inquiry must come to this before the jury : whether it was reason-

The Balto. & Ohio R. R. Co. vs. Green.

able for the plaintiff, under the circumstances, to expect the defendant to do more than deliver the parcel to the wharfinger? If not, then that was the contract, and that ended their responsibility, etc.  But if the plaintiff can satisfy the jury that from the circumstances attending the delivery or course of business, they were fairly justified in expecting the defendant to make a personal delivery at the bank, they must recover; otherwise, it seems to us, the case is with the defendant."  *Farm's & Mech's Bank vs. Champ. Trans., Co.*, 23, *Ver't Rep.*, 186, 209.  Delivery to a common carrier may be constructive and not actual, so delivery by a carrier may be without actual notice to the consignee if according to the course of business.  In other words, the Court should have left it to the jury to find, whether the course of dealing between the company and consignee was such as to make it unreasonable to expect personal notice of the arrival of the cars, and if such course of dealing, rendered such notice unnecessary, or dispensed with it, then the company was not imperatively required to give such notice to constitute delivery, notwithstanding the extra charge of streetage.  *Vide, also, Angel on Carriers,* sec. 301.

The fifth prayer of the defendants that there was no evidence to show an undertaking on the part of the defendant to transport the cars to the foot of 6th street, was, under the circumstances, too strong a conclusion to be arrived at by the Court, and was properly rejected.

We affirm the ruling of the Court in granting the appellee's first prayer and rejecting the appellant's 1st, 2nd, 3rd, 4th and 5th prayers, but there appears to be error in the instruction granted by the Court in reply to the inquiry of the jury. We reverse the judgment and order a *procedendo.*

*Judgment reversed, and*
*procedendo awarded.*

(Decided June 8th, 1866.)